CIRCLE PINES CENTER v ORANGEVILLE TOWNSHIP

Docket No. 48039. Submitted December 10, 1980, at Lansing.—Decided February 5, 1981. Leave to appeal applied for.

Circle Pines Center (CPC) filed a petition with the Michigan Tax Tribunal for an exemption from property tax as an educational and/or charitable institution. The Tribunal denied the petition. CPC appeals. *Held:*

The record does not disclose that the Tribunal erred in determining that CPC was neither a charitable nor an educational institution; nor did it err in finding that CPC did not use its property solely for the purposes for which it was incorporated. The Tribunal properly determined that CPC is not entitled to a property tax exemption.

Affirmed.

1. TAXATION — REAL PROPERTY — TAX EXEMPTIONS — NONPROFIT INSTITUTIONS — STATUTES.

Real estate is exempt from taxation where the real estate is owned and occupied by the exemption claimant, the exemption claimant is a library, benevolent, charitable, educational, or scientific institution, the claimant is incorporated under the laws of Michigan, and the buildings and other property thereon are occupied by the claimant solely for the purposes for which the institution was incorporated (MCL 211.7; MSA 7.7).

2. TAXATION — TAX TRIBUNAL — FINDINGS OF FACT — APPEAL.

The factual determinations of the Michigan Tax Tribunal are binding on the Court of Appeals, and where no fraud is alleged the Court's review on appeal is limited to determining whether the Tribunal committed an error of law or adopted a wrong principle.

REFERENCES FOR POINTS IN HEADNOTES

[1] 71 Am Jur 2d, State and Local Taxation §§ 382-384.
[2] 72 Am Jur 2d, State and Local Taxation § 787.
[3] 71 Am Jur 2d, State and Local Taxation §§ 8, 326 *et seq.*
[4] 72 Am Jur 2d, State and Local Taxation §§ 382, 383, 480.

3. TAXATION — EDUCATIONAL TAX EXEMPTION STATUTES.
    Tax exemption statutes are to be strictly construed in favor of the
    taxing unit.

4. TAXATION — EDUCATIONAL TAX EXEMPTION STATUTES.
    An institution seeking an educational tax exemption must fit into
    the general scheme of education provided by the state and
    supported by public taxation and must make a substantial
    contribution to the relief of the burden of government (MCL
    211.7; MSA 7.7).

*Birch, Dean & Hluchaniuk,* for plaintiff.

*Siegel, Hudson, Gee, Shaw & Fisher* (by *Larry J. Ainslie),* for defendant.

Before: T. M. BURNS, P.J., and ALLEN and D. F. WALSH, JJ.

PER CURIAM. On April 29, 1976, Circle Pines Center (hereinafter CPC) filed a petition with the Michigan Tax Tribunal, praying for exemption from property tax as a charitable and/or educational institution, MCL 211.7; MSA 7.7, for the years 1976, 1977, and 1978. On August 27, 1979, the Tax Tribunal issued an opinion and judgment denying the exemption on grounds that petitioner was neither an educational institution nor a charitable institution within the meaning of MCL 211.7; MSA 7.7. The Tribunal also based its denial of the exemption on the ground that CPC did not use its property solely for the purposes for which it was incorporated. From that judgment, petitioner appeals of right.

Petitioner owns 297 acres of land in Orangeville Township, Barry County. The property includes an orchard, an organic garden, meadows, tracts of pine trees, and mature forest areas. Tenting sites and approximately 40 buildings, including cabins, are situated on the land. CPC has 490 members. A

lifetime membership for an adult costs $200, and members are generally required to pay additional fees for food and lodging when they visit CPC.

CPC espouses a philosophy of cooperative education that is based on the folk-school movement. According to staff member Barnabas Johnson:

"The theme of the folk schools is that it is important to bring many, many peoples of many backgrounds together. To sing the songs of many nations, to dance the dances of many nations, to learn from each other, that this is a necessary theme within the total educational thrust of the society."

Cooperative education is noncoercive and emphasizes "learning through living". Director Timmons testified that, "At Circle Pines, we don't like to do anything unless we are teaching somebody in the process * * *".

CPC runs youth camps during the months of July and August. A camp for families takes place every August. One or two workshops usually occur in October. A cider weekend and membership meeting also take place in October. In November, CPC has a Thanksgiving celebration for persons who "want to spend Thanksgving in a family kind of atmosphere* * *". A winter camp is held in December. During the months of January and February, CPC offers ski weekends. CPC staff members give ski lessons during these ski weekends. CPC also allows outside organizations to use its facilities for conferences and retreats.

CPC is not accredited, and it does not confer any degrees. The Michigan Department of Social Services, Children's Camp Division, inspects CPC facilities annually and grants CPC a license to operate a children's camp. CPC offers no credits, but some students who have visited CPC have received

academic credits from their home institution. CPC maintains a library which contains 2,000 to 3,000 volumes. CPC also has a scholarship committee which meets four times per year in order to select scholarship recipients. Persons who are awarded scholarships do not receive any money, but instead are allowed to visit CPC at no charge or at a reduced charge.

In 1976, 1977, and 1978, CPC leased about 21 acres of land to Glen Wylie, a local farmer. Wylie used the land to grow corn and oats. He paid CPC $5 per acre in 1976, $7.50 per acre in 1977, and $6 per acre in 1978. CPC leased the land to Wylie because he had the heavy machinery that was necessary to reclaim the land, and CPC did not.

At the time this case was heard before the Tribunal, MCL 211.7; MSA 7.7 provided in pertinent part that:

"Real estate or personal property as shall be owned and occupied by nonprofit theater, library, benevolent, *charitable, educational,* or scientific institutions * * * with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incorporated",

is exempt from taxation. (Emphasis supplied.)

In 1944, a four-part test for exemption was developed. That test is still viable today.

"(1) The real estate must be owned and occupied by the exemption claimant;

"(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

"(3) The claimant must have been incorporated under the laws of this State;

"(4) The exemption exists only when the buildings and other property thereon are occupied by the claim-

ant solely for the purposes for which it was incorporated." *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944).

Since petitioner obviously meets parts (1) and (3) of the four-part test, the question on appeal is whether the Tribunal erred in holding that petitioner did not qualify under parts (2) and (4).

This Court's authority to review a decision of the Tax Tribunal is very limited. *Michigan National Bank, Lansing v Lansing,* 96 Mich App 551, 553; 293 NW2d 626 (1980). On appeal, this Court is bound by the factual determinations of the Tribunal. *Id.* Where, as here, no fraud is alleged, this Court's review is limited to determining whether the Tribunal committed an error of law or adopted a wrong principle. *Id.* Because exemption is the antithesis of tax equality, exemption statutes are to be strictly construed in favor of the taxing unit. *Asher Student Foundation v East Lansing,* 88 Mich App 568; 278 NW2d 675 (1979), *lv den* 406 Mich 999 (1979).

Recently, the Supreme Court released its opinion in *Ladies Literary Club v Grand Rapids,* 409 Mich 748; 298 NW2d 422 (1980). That decision, announced subsequent to the filing of the excellent briefs by the parties herein, clearly establishes that CPC is not an educational institution as that term is used in the statute.

"Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption.

"In *Detroit v Detroit Commercial College,* [322 Mich 142; 33 NW2d 737 (1948)], our Court determined that an institution seeking an educational exemption *must fit into the general scheme of education provided by the state and supported by public taxation.* This proposition

was refined in *David Walcott Kendall Memorial School
v Grand Rapids,* 11 Mich App 231; 160 NW2d 778
(1968), which declared that an educational exemption
may be available to an institution otherwise within the
exemption definition, *if the institution makes a substantial
contribution to the relief of the burden of government.*

"It cannot be maintained that were it not for the
Ladies Literary Club's programs, which enhance educational
and cultural interests, the burden on the state
would be proportionately increased. *The club's programs
do not sufficiently relieve the government's educational
burden to warrant the claimed educational
institution exemption." Id.,* 755-756. (Emphasis supplied.)

While CPC's activities focus on cooperative education
and are both commendable and of benefit to
the participants, it cannot be said that such programs
"sufficiently relieve the government's educational
burden to warrant the claimed educational-institution
exemption". Petitioner's reliance on
*National Music Camp v Green Lake Twp,* 76 Mich
App 608; 257 NW2d 188 (1977), is misplaced. In
that case, there was no dispute over petitioner's
status as an educational institution. Unlike petitioner
in the instant case, the Interlochen facility
was a recognized, degree-conferring institution.
The primary issue there was whether certain property
owned by petitioner was used for educational
purposes. Therefore, we hold that petitioner, CPC,
is not an educational institution within the meaning
of MCL 211.7; MSA 7.7.

*Ladies Literary Club, supra,* also causes us to
conclude that CPC is not a charitable institution
within the meaning of the statute. That decision
reversed the Court of Appeals conclusion that "[b]y
whatever statutory category—theater, library, benevolent,
charitable or educational—the Ladies

Literary Club merits exemption under the statute". *Ladies Literary Club v Grand Rapids,* 92 Mich App 567, 570; 285 NW2d 212 (1979). The panoply of public and charitable functions carried on by the plaintiff in that case was even more comprehensive and community oriented than the recreational and educational activities of petitioner in the instant case.

Finally, we find no error in the Tribunal's finding that CPC did not use its property solely for its corporate purposes. The record discloses that some outside organizations use CPC facilities entirely for their own purposes and that they receive no presentation by CPC staffers on cooperative living or cooperative education. For example, CPC provided no presentation to a Kalamazoo group which held a gestalt workshop at CPC in October, 1975, to 58 members of the Divine Light Mission who visited in March, 1976, and to a group of 116 persons called The Church who visited CPC in May, 1976. With respect to the last group, CPC states that it was "hosted with money-making in view, as we were unusually broke at the time". Since petitioner allows its property and facilities to be used by outside organizations for the sole purpose of generating income, it fails to satisfy the fourth requirement of the four-part exemption test. Thus, CPC is not entitled to an exemption under MCL 211.7; MSA 7.7.

Affirmed. No costs, a public question being involved.