CHRISTIAN REFORMED CHURCH IN NORTH AMERICA v CITY OF GRAND RAPIDS

Docket No. 49062. Submitted January 5, 1981, at Grand Rapids.— Decided February 18, 1981. Leave to appeal applied for.

Christian Reformed Church in North America claimed an exemption from property taxation for certain real property used for administrative purposes as a religious and charitable institution and as a house of worship, which exemption was granted by the Michigan Tax Tribunal. The City of Grand Rapids, the taxing unit, appeals. *Held:*

The Tax Tribunal properly found that petitioner qualifies as a charitable institution under the tax-exemption provisions of the General Property Tax Law and that its administrative building also qualified as the type of real property exempt from taxation under the statute.

Affirmed.

1. TAXATION — REAL PROPERTY — TAX EXEMPTIONS — NONPROFIT INSTITUTIONS — STATUTES.

Real estate is exempt from taxation where it is owned and occupied by the exemption claimant, the exemption claimant is a library, benevolent, charitable, educational or scientific institution, the claimant is incorporated under the laws of Michigan, and the buildings and other property thereon are occupied by the claimant solely for the purposes for which the institution was incorporated (MCL 211.7[d]; MSA 7.7[d]).

2. TAXATION — RELIGIOUS CORPORATIONS — CHARITIES.

Religious institutions are not per se charitable but may qualify as charitable institutions for purposes of tax exemption.

REFERENCES FOR POINTS IN HEADNOTES

[1] 71 Am Jur 2d, State and Local Taxation §§ 365-384.
[2, 6, 8] 71 Am Jur 2d, State and Local Taxation § 381.
[3] 71 Am Jur 2d, State and Local Taxation § 375.
[4] 2 Am Jur 2d, Administrative Law §§ 452, 455-458.
[5] 71 Am Jur 2d, State and Local Taxation § 382.
[7] 73 Am Jur 2d, Statutes § 271 *et seq.*

3. TAXATION — TAX EXEMPTIONS — STATUTES.

> An institution otherwise qualified to obtain a tax exemption under the provisions of the General Property Tax Law must offer its benefits to all persons, irrespective of race, creed, or color (MCL 211.7; MSA 7.7).

4. APPEAL — ADMINISTRATIVE LAW — STANDARD OF REVIEW.

> Findings of fact by an administrative tribunal will not be reversed on appeal where there is competent evidence to sustain the findings.

5. TAXATION — EDUCATIONAL TAX EXEMPTION — STATUTES.

> An institution seeking an educational tax exemption must fit into the general scheme of education provided by the state and supported by public taxation and must make a substantial contribution to the relief of the burden of government (MCL 211.7; MSA 7.7).

6. TAXATION — RELIGIOUS CORPORATIONS — TAX EXEMPTIONS — CHARITIES.

> A church or a predominantly religious organization need not relieve a burden of government to qualify as a charitable institution for tax exemption purposes.

7. TAXATION — TAX EXEMPTIONS — STATUTORY CONSTRUCTION.

> Tax exemption statutes are to be strictly construed in favor of the taxing unit.

8. TAXATION — RELIGIOUS CORPORATIONS — TAX EXEMPTIONS — STATUTES.

> A building owned by a religious society otherwise entitled to a property tax exemption and used primarily for administration of the society's business may qualify as tax-exempt real estate under the provisions of the General Property Tax Law (MCL 211.7[d]; MSA 7.7[d]).

*Wierenga & Sevensma,* and *Varnum, Riddering, Wierengo & Christenson* (by *Frank G. Dunten),* for petitioner.

*Daniel A. Ophoff* and *Michael D. McGuire,* Assistant City Attorneys, for respondent.

Before: ALLEN, P.J., and J. H. GILLIS and D. F. WALSH, JJ.

PER CURIAM. We are asked to decide whether petitioner's denominational building, located upon three contiguous parcels of land encompassing some seven acres and used basically for administrative purposes, may properly be granted real and personal property tax exemption pursuant to MCL 211.7(d), (e); MSA 7.7(d), (e). On December 14, 1979, the Michigan Tax Tribunal granted such exemption for the period 1977-1979. Respondent, City of Grand Rapids, appeals of right.

For purposes of this opinion, we adopt relevant portions of the statement of facts and findings set forth in the opinion of the Tax Tribunal.

"The record reveals that the Petitioner-denomination was established in 1857 in Holland and Grand Rapids, Michigan. It was first incorporated in Michigan on July 29, 1974 as a non-profit corporation 'organized for the purpose of performing activities and operations for the carrying out of the mission of the Christian Reformed Church, as directed by its Synod'. Presently the denomination has upwards of 290,000 members throughout the United States and Canada, with a Michigan membership numbering 85,000. The Church consists of some 800 separate, local church congregations, 212 of which are located in Michigan. The budget of the Church-corporation is about $32 million for 1979 and about $35 million for 1980. The denominational operating funds consist exclusively of contributions and offerings, including membership pledges, received from the Church's local congregations in the United States and Canada. About 35% of the total funds are the result of giving by the Michigan membership. Testimony revealed that the Church makes no profit from any of its programs or operations.

* * *

"In August, 1977 Petitioner's articles of incorporation were amended to set forth in detail the purposes of the Church which, as reflected by the proofs, have been

pursued by the corporation at all times relevant to this appeal:

" 'A. To promote the Gospel of the Lord Jesus Christ * * *.

" 'B. To promote the principles and teachings of the Holy Bible * * * in the churches of the denomination.

" 'C. To fulfill the scriptural mandate enunciated by Jesus Christ * * * to "go ye into all the world and preach the gospel to every creature", by actively supporting and promoting Christian missions * * *.

" 'D. To extend mercy and help to those in distress by reason of natural catastrophe and disaster, illness, old age, poverty, unemployment and war * * *.

" 'E. To train members of the denomination to be ministers of the Gospel, missionaries and lay workers * * *; to provide for the financial support and security of ordained and unordained personnel * * *.

" 'F. To receive funds directly and/or through offerings in the churches for the support of the activities, agencies, functions and programs of the denomination and/or for the purpose of supporting and contributing to religious, charitable and educational organizations exempt from taxation under Section 501(c)(3) of the United States Internal Revenue Code of 1954, as amended.

" 'G. To conduct a literature ministry * * *.'

"The denominational building houses administrative offices of the Synod and the several boards and agencies which, under the Synod's supervision, organize, coordinate and administer the Church's programs involving evangelism, education and the work of mercy within the state, nation and throughout the world. The building also includes printing and publishing facilities necessary to the Church's ministry by literature. Per the testimony, the boards and agencies act in a supportive function as the facilitator of the Church's programs. Subject building also has several meeting rooms used exclusively for Church-related meetings and worship services. Witness Brink estimated that upward of 400 such meetings and services are held annually. The building contains no residence facilities.

"Subject building does not have a formal congrega-

tion. Rather, members of the administrative and support staffs, numbering about 100 people, visitors to staff, and groups or individuals who come into the facility for religious services, training assemblies or other religious-oriented instruction are, according to the testimony, routinely involved in worship services as a prelude to their other denominational activities. Included on staff are 18 ministers, any of whom may conduct the various services. Witness Brink testified that the various worship services are open to the general public as are the religious-oriented meetings which bring people from many places for training education, including recruits for the Church's mission programs, who undergo orientation on the premises; and for assisting persons in carrying on Church-sponsored evangelism, teaching and benevolence missions, even in the participants' local communities. As gatherings are held at the building it is 'with prayer, with scripture reading and for inspiration and assistance in doing the work of Christ', as the witness testified. Some agencies housed in subject building hold a period of worship and prayer on a daily and/or weekly basis. A time of worship for the entire staff is set aside monthly and also for frequent special occasions.

"Testimony revealed that personnel are sent out from the denominational building into the 'field' to participate in religious education, in seminars, and in conducting listening tours to sound out the needs of people for assistance via the Church's literature ministry.

"The proofs established that the denomination does not discriminate as to race, creed or color; a practice which, it was emphasized in testimony, would be contrary to the Church's basic tenets. Materials, aids, volunteer and financial assistance are offered—within the limits of the Church's ability—to people, domestic and foreign, who appeal to the Church for, or are determined to be in need of, its assistance and services.

"The several boards and agencies serving in the name of the Church from their denominational building headquarters occupy the subject premises at the pleasure of the Synod without leases or payment of rent. While some boards and agencies are separately incorporated, testimony revealed that none operate independently of

the Synod. Rather, they function as arms of a closely integrated and unified Church operation."[1]

Petitioner claims, and the Tax Tribunal agreed, that the property in question is entitled to exemption under § 7(d) of the General Property Tax Act. That section provides:

"Sec. 7. The following property is exempt from taxation under this act:

*   *   *

"(d) Real estate or personal property as shall be owned and occupied by nonprofit theater, library, benevolent, charitable, educational, or scientific institutions * * * incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incorporated * * *."

In *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944), the Supreme Court developed a four-prong test which must be met to qualify for exemption under § 7(d):

"(1) The real estate must be owned and occupied by the exemption claimant;

"(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

"(3) The claimant must have been incorporated under the laws of this State;

"(4) The exemption exists only when the building and

---

[1] Appellant's brief adopts the Tax Tribunal's statement of facts with three reservations: (1) most of the subcorporations housed in the building generate income from sources other than contributions and offerings; (2) except for the testimony of one witness, there is no evidence that the religious services conducted in the building are open to the public; (3) discrimination is practiced because student scholarships are only available to young people who attend colleges affiliated with plaintiff's denomination.

other property thereon are occupied by the claimant solely for the purposes for which it was incorporated."

The above test continues to serve as the standard to determine exemption status. *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 670; 242 NW2d 749 (1976), *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 751; 298 NW2d 422 (1980), *Circle Pines Center v Orangeville Twp,* 103 Mich App 593; 302 NW2d 917 (1981). Since it is not disputed that petitioner has satisfied parts (1), (3) and (4) of the test, our inquiry is whether petitioner is a "charitable" or "benevolent" institution as required by part (2) of the test.

It is undisputed that petitioner is a religious institution. Religious institutions are not per se charitable but may and often do qualify as charitable institutions. For example, a Bible camp has been held to be a charitable institution. *Gull Lake Bible Conference Ass'n v Ross Twp,* 351 Mich 269; 88 NW2d 264 (1958). There is absolutely no evidence in the instant case that the petitioner used any part of the building for secular purposes or for profit making. The testimony is clear that all of petitioner's activities within the building were confined to administration of the functions for which petitioner was incorporated. Unlike the situation in *Asher Student Foundation v East Lansing,* 88 Mich App 568, 574; 278 NW2d 675 (1979), where the property in question was used to promote "only a few select members of a particular sect", the building in the instant case was used to promote the broad and inclusive religious purposes of the Gospel in general.

Respondent takes issue with the Tax Tribunal finding that petitioner's activities are beneficial to the welfare of the general public. In support of this claim, respondent refers to testimony that in

the administration of scholarship programs awards were limited to persons of similar creed. While an institution may not qualify for tax exemption unless its beneficence is offered to all persons, irrespective of race, creed, or color, *Asher, supra,* 573, *Gull Lake Bible Conference Ass'n, supra,* 274, the Tax Tribunal concluded that, given the broad spectrum of religious activities performed by petitioner without any limitation as to creed, the single exception of the scholarship program was insufficient to determine that petitioner was discriminatory.

"In sum, Petitioner strives to better the condition of society or a considerable part thereof so as to constitute the organization a charitable and, in the broader sense, a benevolent, institution. * * *

"Further, while it is reasonable to assume that the subject property is used primarily by members of Petitioner's denomination for Church-related purposes including its programs of outreach and mercy, the proofs established that the property is open to the general public and that the benefits emanating therefrom are extended to those in need of its volunteer, financial and spiritual assistance. In our view, Petitioner's restriction of minority student scholarships to persons within the 'ecclesiastical fellowship', as, it was testified, is loosely construed by the corporation, is not sufficient to render the organization a discriminatory entity."

We agree with the Tax Tribunal. According to the testimony, only $16,000 out of a total denominational budget of some $30,000,000 was devoted to the scholarship program. Findings of fact by an administrative tribunal are not reversed upon appellate review where there is competent evidence to sustain the findings. *Consolidated Aluminum Corp, Inc v Richmond Twp,* 88 Mich App 229, 231; 276 NW2d 566 (1979). The record is abundantly

clear that, with the possible exception of the scholarship program, all of the petitioner's many programs were provided in a nondiscriminatory manner.

Respondent also argues that petitioner does not qualify as a charitable institution because its programs, though worldwide in scope, have almost no effect on the Grand Rapids area and have very little effect on Michigan. Specifically, respondent contends that a religiously-oriented organization is not charitable within the meaning of § 7.7(d) unless the organization's programs relieve a burden of government. The "relieve a burden of government" requirement is found in recent Michigan cases.

"We cannot conclude that these educational or cultural programs may be considered as being sponsored by an 'educational institution'. Something more than serving the public interest is required to bring one claiming an exemption as an educational institution within the goals and policies affording a tax exemption.

*   *   *

"It cannot be maintained that were it not for the Ladies Literary Club's programs, which enhance educational and cultural interests, the burden on the state would be proportionately increased. The club's programs do not sufficiently relieve the government's educational burden to warrant the claimed educational institution exemption. See *American Society of Agricultural Engineers v St Joseph Twp,* 53 Mich App 45; 218 NW2d 685 (1974); *American Concrete Institute v State Tax Comm,* 12 Mich App 595; 163 NW2d 508 (1968).

"The tribunal referee was correct in finding that plaintiff 'is essentially a social club which happens to engage in some non-profit activities. While the community may benefit culturally from [plaintiff's] activities, these activities are not the type which entitle one to an exemption because he has relieved the community from

the expense of a like service.' " *Ladies Literary Club,
supra,* 755-756.

"While [Circle Pines Center's] activities focus on coop-
erative education and are both commendable and of
benefit to the participants, it cannot be said that such
programs 'sufficiently relieve the government's educa-
tional burden to warrant the claimed educational-insti-
tution exemption'. Petitioner's reliance on *National
Music Camp v Green Lake Twp,* 76 Mich App 608; 257
NW2d 188 (1977), is misplaced. In that case, there was
no dispute over petitioner's status as an educational
institution. Unlike petitioner in the instant case, the
Interlochen facility was a recognized, degree-conferring
institution. The primary issue there was whether cer-
tain property owned by petitioner was used for educa-
tional purposes. Therefore, we hold that petitioner,
CPC, is not an educational institution within the mean-
ing of MCL 211.7; MSA 7.7." *Circle Pines Center, supra.*

All of the cases cited above pertain to organiza-
tions seeking tax exemption under the *educational*
institution exemption. The decisive question in
each case was whether the institution's programs
sufficiently relieved the government's educational
burden. None of the cases referred to the govern-
ment's religious burden. We find no authority for
the proposition that a church or predominantly
religious organization must relieve a burden of
government in order to qualify as a charitable
institution. This is not surprising since, unlike
education, the government is not in the business of
religion. In *General Conference Church of God v
Carper,* 192 Colo 178; 557 P2d 832 (1976), a denial
of tax exemption on grounds that only 200 of some
5,000 members of the church were residents of
Colorado was reversed by the Colorado Supreme
Court. In so doing, the court rejected what it called
the "social benefit" test, saying:

"This rationale requires that a distinction be made

between charitable and religious exemptions; a religious group does not have as a fundamental purpose the providing of services which the state would otherwise have to provide since the state is constitutionally prohibited from such religious involvement. *See* Note, 29 Rocky Mtn L Rev 143 (1956-57)." *Id.,* 181.

Finally, we note that conspicuously absent in this Court's opinion in *Asher Student Foundation, supra,* a case involving a tax exemption for a religious organization," was any mention that exemption depended upon relieving a burden of government. We also disagree that petitioner's programs were of little impact in Michigan. As appears in the statement of facts, 212 of some 800 separate church congregations are in Michigan, and 85,000 of 290,000 members are in the state of Michigan. The Michigan membership contributes $12,000,-000.

The thrust of the city's opposition to tax exemption is that the world headquarters building is not a church in the conventional sense, that architecturally the building looks more like an office than it does a church, and that it is basically used for administration and as a publishing house. No Michigan case has spoken to the question of whether a nonchurchlike building, used primarily for administration of church business, is exempt from taxation. That question was addressed in *Board of Trustees of Kansas East Conference of the United Methodist Church v Cogswell,* 205 Kan 847; 473 P2d 1 (1970). The question involved was whether taxes paid on the administrative office building of the United Methodist Church in Kansas could be recovered. The building housed the administrative offices and staff of the Church Conference, consisting of some 900 churches and 650 ministers in Kansas. As in the case before us, the

building was used exclusively for the administration of the Conference's religious activities, for general supervision of its ministers and churches, and occasionally for holding religious services. The trial court denied exemption. The Kansas Supreme Court reversed saying:

"It was not the intention of the framers of our constitution or of our legislators that the law would be interpreted to deny exemption to adminsitrative offices so essential to a well organized and efficient system for providing religious, charitable or educational benefits to the citizens of Kansas. The administrative offices of such institutions, although perhaps a step removed from the performance of the ultimate beneficial act, are no less an integral, essential and absolutely necessary part of the act itself. To hold otherwise would be to ignore the obvious necessity for the administrative function. It would refute the involvement of the executive official in the delivery of socially beneficial services, and would discourage the development of well organized institutions serving society through the most effective management techniques." *Id.,* 859.

Similarly, no Michigan case has spoken to the question of whether a publishing house operated or owned by a church or other charitable organization is exempt from taxation. But that issue has been addressed in other jurisdictions, all of which have held that, if the publishing is for church or other recognized charitable purposes, the property is exempt. *American Issue Publishing Co v Evatt,* 137 Ohio St 264; 28 NE2d 613 (1940), *The Hubbard Press v Glander,* 156 Ohio St 170; 101 NE2d 382 (1951), *Assessors of Boston v Lamson,* 316 Mass 166; 55 NE2d 215 (1944), *The Congregational Sunday School & Publishing Society v Board of Review,* 290 Ill 108; 125 NE 7 (1919). But if the publishing facilities are used only in part for

publishing religious books and periodicals for a church or religious organization and are also substantially devoted to other commercial printing, then exemption is not granted. *Zindorf v The Otterbein Press,* 138 Ohio St 287; 34 NE2d 748 (1941). The testimony and exhibits in the instant case disclose that the Board of Publications, one of the several boards and agencies occupying the building in question, prints and publishes such religious material as the Church's Synod directs, that 20% of the printing is sold to groups and individuals of the Christian Reformed denomination, that all sales are made at cost, and that the printing operation operates at an annual loss which is made up from the Church's general membership support. Although the exemption statutes of other jurisdictions differ somewhat in their wording from the Michigan statute, we do not find the difference so substantial as to lead to a contrary result.

Based on the foregoing authority and the testimony and exhibits in the instant case, we find that petitioner qualifies for exemption for each of the three years at issue as a charitable institution under the provisions of MCL 211.7(d); MSA 7.7(d). We reach this conclusion fully aware of the rule that tax exemption statutes are to be strictly construed against the property owner. *Michigan Baptist Homes & Development Co, supra.* The Tax Tribunal also found that the subject building qualifies as one "owned by a religious society and used exclusively for religious services or for teaching religious truths and beliefs of the society" per the amendatory language, effective January 11, 1977, of MCL 211.7(e); MSA 7.7(e). Because of our holding that the building qualifies under subsection (d), it becomes unnecessary for us to address the issue

of whether petitioner also qualifies under subsection (e).

Affirmed. No costs, a question of public interest being involved.