EDSEL & ELEANOR FORD HOUSE v VILLAGE OF GROSSE
POINTE SHORES

Docket No. 62691. Submitted October 6, 1983, at Detroit.—Decided
May 14, 1984. Leave to appeal applied for.

The Edsel & Eleanor Ford House, a Michigan nonprofit corpora-
tion which was formed to own and maintain the former estate
of the Fords, comprised of home, outbuildings, and surrounding
lands totaling about 50 acres, and thereby give effect to the will
of Eleanor Clay Ford that the property be preserved as "a
historical and cultural center", sought tax exempt status for
the property from the municipalities in which the property is
located, the Village of Grosse Pointe Shores and Lake Town-
ship, Macomb County. When the village and township denied
the request for tax exempt status, Edsel & Eleanor Ford House,
in 1979, filed a petition with the Michigan Tax Tribunal
seeking that it be exempted from ad valorem taxes on the basis
that it was a charitable institution which used the subject
property for charitable purposes. South Lake Schools was per-
mitted by the Tax Tribunal to intervene as a respondent.
Respondents argued that petitioner was not entitled to be
exempt from ad valorem taxes in that petitioner was not a
charitable institution within the meaning of the controlling
statute and that, even if the buildings and the approximately
two acres of land immediately surrounding those buildings were
held to be exempt from taxation, the remaining land should be
subject to ad valorem taxes. The hearing officer held that a char-
itable institution is one which is "kind and generous in giving
money or other help to those in need" and that, using that definition,
a majority of the activities held on the subject property were
not charitable endeavors. The hearing officer concluded that

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 6-9] 71 Am Jur 2d, State and Local Taxation §§ 368, 370, 480-
482.
[2] 2 Am Jur 2d, Administrative Law § 654 et seq.
[3] 71 Am Jur 2d, State and Local Taxation § 326.
[5] 71 Am Jur 2d, State and Local Taxation § 363.
[6-9] 71 Am Jur 2d, State and Local Taxation § 391.
[8] 71 Am Jur 2d, State and Local Taxation § 317.

the property was not being used solely, or even primarily, for charitable purposes but was rather being used for social or cultural purposes and, accordingly, the property was not exempt from ad valorem taxation for tax years 1980 and 1981. The Tax Tribunal adopted the opinion of the hearing officer as its own. Petitioner appealed. *Held:*

1. For real estate to be exempt from ad valorem taxes the property must be owned and used by an institution incorporated under the laws of this state which is a nonprofit theater, library, or a charitable, educational, or scientific institution and the property must be occupied by the institution solely for the purposes for which the institution was incorporated. The questions in this case are whether petitioner is a charitable institution within the meaning of that term as used in the statute and, if so, whether the property is being used for charitable purposes.

2. Under the narrow definition of charity used by the Tax Tribunal, petitioner is not a charitable institution in that it gave no money or help to the poor; however, the dictionary definition of charity used by the Tax Tribunal is too narrow in its scope. To qualify for a charitable use exemption under the controlling statute, the property must be used for the benefit of the general public without restriction by bringing the users of the property under the influence of religion or education, by erecting public buildings or works, or by otherwise lessening the burdens of government.

3. Petitioner, by maintaining a property of historical value and making that property available to the general public without restriction for historical tours and to nonprofit organizations for educational, charitable, cultural, or civic activities, is a charitable institution.

4. Even though some of the events held on the property by nonprofit organizations were social in nature, the underlying purposes of those events were to expose members to the history of the industrial era or to conduct fundraisers for charitable purposes, and thus did not interfere with the underlying purposes and intent to preserve and make available to the public a property of historical value and significance.

5. The property owned and operated by petitioner was entitled to tax exempt status for the years 1980 and 1981.

Reversed.

CYNAR, J., concurred in part and dissented in part. He concurred with the holding that the buildings themselves and the land immediately surrounding the buildings should be

exempt from ad valorem taxation. He would, however, remand
to the Tax Tribunal for a determination of whether the remain-
ing portion of the 50-acre estate was being used for a charitable
purpose such that it should be exempt from ad valorem taxa-
tion.

## Opinion of the Court

1. Taxation — Property Tax — Exemptions From Taxation.

   A claimant seeking exemption from property taxes must satisfy
   the following requirements: the property must be owned and
   used or occupied by the claimant; the claimant must qualify as
   a nonprofit theater, library, or charitable, educational, or scien-
   tific institution; the claimant must be incorporated under Mich-
   igan law; and a building and property located thereon must be
   occupied by the claimant solely for the purpose for which the
   claimant was incorporated (former MCL 211.7; MSA 7.7).

2. Taxation — Appeal — Tax Tribunal.

   The Court of Appeals in an appeal from the Tax Tribunal is
   bound by the tribunal's factual determinations and may con-
   sider only whether the tribunal erred as a matter of law in its
   determination (Const 1963, art 6, § 28).

3. Taxation — Exemptions From Taxation — Statutes — Judicial
   Construction.

   Tax exemption statutes are in derogation of the general principle
   of equality in taxation and are thus to be strictly construed.

4. Taxation — Exemptions From Taxation — Charity.

   Real property, to qualify for a charitable tax exemption, must be
   used for the benefit of the general public without restriction by
   bringing the users of the property under the influence of
   religion or education, by erecting public buildings or works, or
   by otherwise lessening the burdens of government (former MCL
   211.7; MSA 7.7).

5. Taxation — Tax Tribunal — Charity.

   It is an error of law for the Tax Tribunal to limit its definition of
   charity, for the purpose of the tax exemption on real property
   owned and operated by a charitable institution, to the distribut-
   ing of goods or funds to the needy, such a definition being too
   narrow a standard (former MCL 211.7; MSA 7.7).

6. Taxation — Exemptions From Taxation — Charitable Institu-
   tions.

   A nonprofit institution maintaining a historical property which is

made available to the general public without restriction for historical tours and which is made available to nonprofit organizations for educational, charitable, cultural, or civic activities is a charitable institution within the meaning of the statute permitting exemption from taxation of real property owned by a charitable institution (former MCL 211.7; MSA 7.7).

7. TAXATION — EXEMPTIONS FROM TAXATION.

A historical property which is owned and maintained by a nonprofit institution and is made available to the general public and to nonprofit organizations is exempt from ad valorem taxes where the social functions of the organizations using the property are vehicles through which to expose members to the history of the industrial era or to conduct fundraisers for charitable purposes and are thus consistent with the nonprofit owner's purpose and intent to preserve and make available to the public a property of historical and cultural value and significance (former MCL 211.7; MSA 7.7).

8. TAXATION — EXEMPTIONS FROM TAXATION — STATUTES — AMENDMENTS TO STATUTES.

The effect, if any, of the 1980 amendment of the statute providing an exemption from ad valorem taxes for property owned and used by libraries, benevolent, charitable, educational, or scientific institutions for those purposes was to provide tax exempt status to a broader range of organizations; accordingly, any property which would have been exempt under the charitable institution provisions of the statute prior to its 1980 amendment would be exempt under the statue as amended (former MCL 211.7; MSA 7.7; 1980 PA 142, MCL 211.7n, 211.7o; MSA 7.7[4k], 7.7[4-l]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY CYNAR, J.

9. TAXATION — PROPERTY TAX — EXEMPTIONS FROM TAXATION.

*It is error for the Tax Tribunal to deny tax exempt status with respect to a historical building owned by a nonprofit institution which makes those buildings available to other nonprofit organizations and the general public for study and cultural purposes; however, the Tax Tribunal should decide whether all of a 50-acre parcel upon which the exempt buildings are located is used for exempt purposes and whether all or only a portion of the parcel should be accorded tax exempt status (former MCL 211.7; MSA 7.7).*

*Bodman, Longley & Dahling* (by *Joseph A. Sulli-*

van, *Andrew J. Broder, Fredrick J. Dindoffer,* and *Martha Bedsole Goodloe),* for petitioner.

*Killebrew, Ihrie & Short* (by *William W. Killebrew),* for respondents.

*John H. Voe,* for intervenor.

Before: M. J. KELLY, P.J., and CYNAR and SHEPHERD, JJ.

M. J. KELLY, P.J. Petitioner, Edsel & Eleanor Ford House, appeals as of right from a decision of the Michigan Tax Tribunal denying it an exemption from ad valorem property taxation for the years 1980 and 1981. Petitioner challenges tax assessments of $967,700 for each year on the ground that it is exempt as a charitable institution or nonprofit theater under former MCL 211.7; MSA 7.7, for the tax year 1980 and under MCL 211.7n; MSA 7.7(4k) and MCL 211.7o; MSA 7.7(4-l), for the tax year 1981. We agree.

I

The property owned by Edsel & Eleanor Ford House consists of 50.3 acres of land on Lake Shore Drive in the Village of Grosse Pointe Shores. On the property is located the main house, built in the 1920's as the personal residence of Edsel and Eleanor Ford, a children's playhouse, a swimming pool and pool house, a power house, an equipment building, a greenhouse, and a long gatehouse which formerly housed servants. The house is furnished with many of the antiques and rare art works collected by the Fords during their lifetime and is included in both the National Register of Historic Places and the Michigan State Register of

Historical Sites. The Michigan History Division of the Michigan Department of State has designated the house as a site for a historic marker.

Eleanor Ford died in 1976. In her will, she provided that her house be preserved "for the benefit of the public", and specifically directed that it be transformed into "an historical property and cultural center" to be used for activities including but not limited to:

"conferences and receptions; exhibitions of works of art; lectures and symposia; concerts, recitals and other musical events; transient quarters for artists, lecturers, authors, scientists, and other prominent dignitaries visiting Michigan; temporary residence for distinguished refugees or other distinguished visitors in this country; headquarters for learned societies, community service associations, garden clubs and other non-profit organizations; meeting place for local and other groups; public garden and public park; etc."

To ensure that her wishes were carried out, Mrs. Ford left an endowment of $15,000,000 for the maintenance and preservation of the property.

Pursuant to the terms of the will, a foundation, the petitioner herein, was formed, headed by a board of trustees composed primarily of Ford family members. The board was vested with the authority to develop policy, approve budgets, and moniter activities on the ,property. Articles of incorporation were filed for a nonprofit corporation; and in 1978, after extensive alterations and renovations, the house was opened to the public. The policies established by the board, in accordance with the terms of Mrs. Ford's will, provided that any nonprofit group was allowed to use the house for functions having an educational, charitable, cultural, or civic purpose, but excluding all com-

mercial functions or those aimed at promoting the sponsoring corporation.

During 1980 and 1981, the house was used for numerous activities, including but not limited to conferences, seminars, receptions, meetings, recitals, lectures, concerts, and fundraisers. Sponsoring groups included, the Michigan Cancer Foundation, Operation LINC, Ronald McDonald House, Henry Ford Hospital, Boy Scouts, Campfire Girls, the Republican and Democratic convention site election committees, the National Governors' Conference, the Society of Manufacturing Engineers, the Stanford Club of Michigan, and others. A one dollar "preservation fee" was charged per guest.

In 1980, the petitioner began to offer individual tours to members of the public without regard to social, racial, religious, or economic considerations. Fees were generally charged, though waived for anyone who was unable to pay, and group tours by school children were always free. The amount of the fees collected was less than the amount expended for the maintenance of the property.

II

Prior to June 2, 1980, MCL 211.7; MSA 7.7 provided, in relevant part, that exemption status applied to:

"Real estate or personal property shall be owned and occupied by nonprofit theater, library, benevolent, charitable, educational or scientific institutions and memorial homes of world war veterans incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated."

Effective June 2, 1980, the general property tax statute provides exemption status for:

"[r]eal estate or personal property owned and occupied by nonprofit theater, library, educational, or scientific institutions incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which the institutions were incorporated * * *." MCL 211.7n; MSA 7.7(4k),

and for:

"[r]eal estate or personal property owned and occupied by nonprofit charitable institutions incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated; * * *." MCL 211.7o; MSA 7.7(4-l).

In interpreting the earlier statute, the Michigan Supreme Court has developed a four-pronged exemption test, first enunciated in 1944 and reaffirmed as recently as 1980:

"(1) The real estate must be owned and occupied by the exemption claimant;

"(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

"(3) The claimant must have been incorporated under the laws of this State;

"(4) The exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purpose for which it was incorporated." *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944); *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 670; 242 NW2d 749 (1976); *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 751; 298 NW2d 422 (1980).

The Tax Tribunal, in adopting the findings and conclusions of the hearing officer, applied the above test and found that petitioner had failed to satisfy requirements (2) and (4). First, the tribunal held that the maintenance and operation of the property as a cultural and historical center is not a charitable function and that the petitioner is thus not a charitable institution within the meaning of the tax exemption statutes. Second, the tribunal held that, even if the the petitioner were found to be a charitable institution, the property was not used solely or even primarily for the purposes for which it was incorporated and the property was thus not exempt. We review the tribunal's decision, bound by its factual determinations, and consider only whether the tribunal erred as a matter of law in deciding these two issues. Const 1963, art 6, § 28; *Circle Pines Center v Orangeville Twp,* 103 Mich App 593, 597; 302 NW2d 917 (1981).

### III

In determining that petitioner is not a charitable institution, the tribunal looked to the standard dictionary definition of charity and concluded that charitable institutions, as referred to in the tax exemption statutes, must be "kind and generous in giving money or help to those in need". Since petitioner did not provide money or help to the needy, petitioner did not qualify as a charitable institution. While we recognize that tax exemption statutes are in derogation of the general principle of equality in taxation and are thus to be strictly construed, *Retirement Homes of Detroit Annual Conference of United Methodist Church, Inc v Sylvan Twp,* 416 Mich 340, 348; 330 NW2d 682 (1982); *Ladies Literary Club v Grand Rapids, su-*

*pra,* p 754, we reject as too narrow the tribunal's definition of a charitable institution.

The Michigan Supreme Court has, in fact, provided several different analyses of activities considered charitable for purposes of real and personal property tax exemption, all of which are significantly broader than that enunciated by the tribunal. It has been held that to qualify for a charitable tax exemption, real property must be used for the benefit of the general public without restriction. *Auditor General v R B Smith Memorial Hospital Ass'n,* 293 Mich 36, 38-39; 291 NW 213 (1940); *Michigan Baptist Homes v Ann Arbor, supra,* p 671; *Retirement Homes v Sylvan Twp, supra,* p 348. In *Retirement Homes v Sylvan Twp, supra,* pp 348-349, the Supreme Court cited with approval a definition of a charity which had been used by the Missouri Supreme Court and which had been used by this Court in *Asher Student Foundation v East Lansing,* 88 Mich App 568, 572; 278 NW2d 675 (1979), *lv den* 406 Mich 999 (1979):

"Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." *The Salvation Army v Hoehn,* 354 Mo 107, 114; 188 SW2d 826 (1945). (Citations omitted.)

We conclude that the tribunal erred in limiting its definition of charity to the distribution of goods or funds to the needy. Another panel of this Court has recently reached a similar conclusion regard-

ing what appears to be the tribunal's consistent application of an erroneously narrow standard. See *Kalamazoo Aviation History Museum v Kalamazoo,* 131 Mich App 709; 346 NW2d 862 (1984), where the tribunal refused to allow a personal property tax exemption for a nonprofit corporation operating a museum on World War II aviation. We likewise hold that the relevant inquiry is whether the petitioner promotes the general welfare of the public by extending a gift for the benefit of an indefinite number of people, bringing them under the influence of religion or education, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

We believe that the petitioner does qualify as a charitable institution under the more expansive definition of charitable institution provided by the Supreme Court. Petitioner extends the gift of a cultural and historical center to all members of the public and to any nonprofit organization wishing to use the property for certain activities. Petitioner maintains the house upon the property as a public building and that house has been designated an historical building by several organizations, including the State of Michigan. We conclude that the petitioner satisfies the second requirement of the four-pronged exemption test.

## IV

We must next consider whether the property is occupied by the petitioner solely for the purposes for which it was incorporated. The tribunal held that the property was used in 1980 and 1981 primarily for social or cultural purposes and that, because the functions held there were not charitable in nature, petitioner's occupation of the premises was not solely for the purposes for which it

was incorporated and petitioner thus failed to satisfy the fourth requirement of the exemption test. Presumably, the tribunal relied upon its own narrow definition of the term charitable in analyzing the nature of the activities conducted at the house.

In its articles of incorporation, petitioner specifically states as its purposes:

"a) To constitute the charitable corporation directed to be formed by the late Eleanor Clay Ford under Article V of her Will (copy attached), and, as such, to receive from the Executors of the Estate of Eleanor Clay Ford the bequest and legacies given for charitable uses under Article V of said Will, more particularly described as follows: (i) those premises in the Village of Grosse Pointe Shores and City of St. Clair Shores, Michigan, which constituted the home of the late Eleanor Clay Ford and are now known as Edsel & Eleanor Ford House, (ii) furnishings, furniture and other contents of said premises and (iii) the endowment fund given to said charitable corporation as a legacy; and

"b) To maintain and operate Edsel & Eleanor Ford House as a historic property and cultural center of service to the public, in the manner provided in Article V of said Will;

"all of the foregoing to be carried on exclusively for charitable purposes and in accordance with the limitations and restrictions of 501(c)(3) and 2055 of the Internal Revenue Code of 1954, as amended (or their counterparts from time to time in force).

*  *  *

"No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, trustees, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article II hereof. No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting

to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office."

We believe that the petitioner's occupancy of the property in 1980 and in 1981 was consistent with its stated purposes of incorporation. Petitioner exists only to benefit the public and does not derive any benefit for itself or for its members in maintaining the house and property. Petitioner schedules individual and group historical tours for the general public, providing a description of the industrial developments in Detroit which resulted in the development of the property. Petitioner also makes the house available to nonprofit groups at fees far below maintenance costs. These organizations are free to meet and conduct any activity in the house so long as the purpose of the activity is educational, charitable, cultural, or civic in nature. The fact that some nonprofit organizations choose cocktail parties or dinners as the vehicles through which to expose members to the history of the industrial era, or through which to conduct fundraisers for charitable purposes, does not vitiate the nature of the activity engaged in by the petitioner, that is, the maintenance and provision for the general public, without restriction, of valuable historical property which would not otherwise be available.

For these reasons, we distinguish the instant case from *Ladies Literary Club v Grand Rapids, supra,* and from *Circle Pines Center v Orangeville Twp, supra,* relied upon by the respondents and the intervening respondent as authority for denying petitioner's tax exempt status. In *Ladies Literary Club* the property for which the plaintiff sought exemption was a 93-year-old club house

which included a small library, an auditorium, and facilities for child care which was provided during the various functions conducted there. The plaintiff club organized classes in writing and theater, and offered lectures on various topics. The plaintiff also organized trips to music festivals, plays, museum exhibits, and flower shows. While the programs and trips were open to nonmembers for an admission fee, and while the plaintiff did engage in several public service or charitable activities, the Court found that the principal use of the clubhouse was for the social benefit of its members. The Court rejected the plaintiff's claim that its trips, lectures, and classes were "educational", as that term is used in the tax exemption statute, since the activities neither fit into the general scheme of education provided by the state nor eased the burden of the state in providing education to its citizens. 409 Mich 755-756.

Similarly, in *Circle Pines Center,* the property for which exemption was sought was 297 acres in Orange Township with tent sites, cabins, orchards, meadows, gardens, and a natural forest. The plaintiff center organized such activities as youth camps, family camps, workshops, cider weekends, and ski weekends for the benefit of its members. The philosophy of the group was "cooperative education", which emphasizes "learning through living". Outside organizations were sometimes allowed to use the plaintiff's facilities for retreats and seminars. This Court found that although the plaintiff's activities were beneficial and commendable, the plaintiff did not qualify as an educational institution for purposes of the tax exemption statute. This Court further noted that the plaintiff *Circle Pines Center* was even less involved in benefitting members of the public without restric-

tion than was the plaintiff in *Ladies Literary Club v Grand Rapids.*

Unlike the activities engaged in by the *Ladies Literary Club* and *Circle Pines Center,* petitioner in this case did not organize social and cultural events for the benefit of its members. The petitioner's only activities were to maintain the property as a historical landmark and to make that landmark available to the general public and to nonprofit corporations. The fact that some nonprofit groups chose a social activity as the mechanism by which to expose their visitors to the historical value of the house did not change the nature of the petitioner's activities. We find that the tribunal erred as a matter of law in concluding that the petitioner does not qualify for tax exempt status under former MCL 211.7; MSA 7.7 and applicable case law.

## V

We further find that the four-pronged exemption test applies where the question of petitioner's tax exempt status arises under MCL 211.7n; MSA 7.7(4k) or MCL 211.7o; MSA 7.7(4-l). The relevant language of the amended statute is nearly identical to the pre-amended version. Additional language in the new statute may indicate an intent on the part of the Legislature to provide tax exempt status to a broader category of organizations, though we find no need to decide that issue here. Petitioner qualifies for tax exempt status for the years 1980 and 1981.

Reversed.

SHEPHERD, J., concurred.

CYNAR, J. *(concurring in part and dissenting in*

*part).* While not totally agreeing with the reasoning and result reached by the Tax Tribunal, I must respectfully dissent in part with respect to the majority's analysis of the Tax Tribunal's opinion as well as the result reached by my colleagues.

The majority concludes that the tribunal erred in limiting its definition of charity to the distribution of goods or funds to the needy. I see it otherwise. The tribunal found that the subject property had been used by both profit and nonprofit organizations and that the property had been used for other than charitable purposes. The tribunal was not convinced that the maintenance and operation of the subject property as a cultural and historical center or as a meeting place was a charitable purpose within the meaning of the statutes. The tribunal's review of the activities between January 1, 1979, and December 31, 1979, indicated that, of a total of 80 events, only 31 or 38.75 percent could be clearly identified as fundraising benefits for charitable organizations. Further, for the calendar year 1980, ending on December 31, 32 out of 138 activities could be so classified. The tribunal observed that the other activities included cocktail parties, receptions, teas, dinner dances, tours, concerts, and meetings.

A charitable purpose encompasses much more than dropping a coin in a canister.

Eleanor Clay Ford had the benefit of highly competent legal counsel in having her will drawn. The will is much more than the words of a fine attorney. The will embodies the foresight, wisdom, intellect, and the charitable heart of the giver. Eleanor Clay Ford contemplated that the property would serve the public as a historical and cultural center and would provide the site for such activities as: conferences and receptions; exhibitions of

works of art; lectures and symposia; concerts, re-
citals, and other musical events; transient quarters
for artists, lecturers, authors, scientists, and other
prominent dignitaries visiting Michigan; tempo-
rary residence for distinguished visitors in this
country; headquarters for learned societies, com-
munity service associations, garden clubs, and
other nonprofit organizations; meeting place for
local and other groups; public garden and public
park; etc.

However, Eleanor Clay Ford was a realist. She
did not impose legally binding restrictions on the
foundation as to the particular use of the property.
She did not disapprove the transfer of land to
another charity or municipality, or the sale of
excess land for development. Such consideration
was left to the foundation trustees.

Only a limited number of the giver's hopes and
expectations have been realized.

I agree with the majority that the relevant
inquiry is whether the petitioner promotes the
general welfare of the public by extending a gift
for the benefit of an indefinite number of people,
bringing them under the influence of religion, or
maintaining public buildings or works or other-
wise lessening the burden of government.

The director and the trustees have a responsibil-
ity to preserve, protect, and properly maintain the
property. It is a close question whether the prop-
erty has been available to an indefinite number of
people or whether the property has been struc-
tured for use by only a certain cross-section of the
public. However, I also believe the petitioner does
qualify as a charitable institution under the four-
pronged exemption test of *Engineering Society of
Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79
(1944).

The subject property is composed of 50.3 acres and improvements thereon. It was argued on behalf of respondents that if petitioner is a tax exempt institution, its exemption should extend only to the 1.8 acres of the subject property upon which the house and other buildings are located. The local units of government in which the subject property is located could hardly be expected to agree that exempting 50.3 acres from taxation, under the facts of this case, lessens the burden of government.

An occasional use of the land by a boy scout troop or by an antique car gathering does not a charity make.

I would find that the improvements, including the house, the playhouse, the swimming pool and pool house, the power house, the equipment building, the greenhouse, and the gate house are exempt from ad valorem taxation for the 1980 and 1981 tax years. Further, I would remand this case to the Tax Tribunal for further hearing, if needed, and a determination of what additional part of the property surrounding the exempt property should be exempted from the taxation. No costs.